## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.: 8:20-cv-1798

RAY STOLL, *et al.*,

    Plaintiffs,

v.

MUSCULOSKELETAL INSTITUTE, CHARTERED,

    Defendant.

_____/

*Removal of Hillsborough County Circuit Court Case No. 20-CA-005354 Div. D*

## NOTICE OF REMOVAL

Defendant Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute ("FOI"), pursuant to 28 U.S.C. § 1332(d), removes to this Court the state action described below, which is within the original jurisdiction of this Court and properly removed under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

### PROCEDURAL HISTORY

1. On June 30, 2020, Plaintiffs Ray Stoll and Heidi Imhof filed a purported class action captioned *Ray Stoll and Heidi Imhof, et al. v. Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute*, Case No. 20-CA-005354, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "State Court Action").

2. Plaintiffs served FOI with the State Court Action Summons and Complaint on July 7, 2020. This notice is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days of the date the State Court Action was served on FOI. Pursuant to 28 U.S.C. § 1446(a) and M.D. Fla. L.R. 4.02, true and correct copies of all process, pleadings, orders and any other items in the file in the State Court Action are attached as follows: the Complaint is attached as **Exhibit**

**A**, the state court docket is attached as **Exhibit B,** and all remaining state court documents are attached as **Exhibit C.**

3. The Thirteenth Judicial Circuit in and for Hillsborough County, Florida is located within the Middle District of Florida. 28 U.S.C. § 89(b). Therefore, removal to this Court is proper under 28 U.S.C. § 1441(a).

### NO JOINDER NECESSARY

4. No other defendant is required to consent to this removal. 28 U.S.C. § 1453(b).

### ALLEGATIONS IN THE COMPLAINT

5. This action is a putative class action arising from a ransomware attack against FOI on or about April 9, 2020. Complaint ("Compl.") ¶ 2.

6. The action is brought on behalf of "[a]ll individuals in the United States who are current or former patients or customers of [FOI]," whose "personally identifiable information" ("PII") was "exposed and accessed, and who suffered injury or harm resulting from the dissemination of their PII." *Id.* ¶ 78. Plaintiffs allege that this action arises from FOI's "failure to properly secure and safeguard protected health information…, medical information, and other personally identifiable information" (*id.* ¶ 1), misrepresentation of its security practices (*id.* ¶ 197), "unauthorized disclosure of the PII of Plaintiffs and Class Members by [FOI] to unknown third parties" (*id.* ¶ 3), "fail[ure] to adequately investigate the breach to determine the scope and expanse of the breach (*id.* ¶ 39), and "fail[ure] to provide timely, accurate, and adequate notice to … [individuals] that their PII had been compromised" (*id.* ¶ 1).

7. The Complaint contains claims for equitable relief (injunctive and declaratory), negligence (First Cause of Action), invasion of privacy (Second Cause of Action), breach of implied contract (Third Cause of Action), negligence per se (Fourth Cause of Action), unjust

enrichment (Fifth Cause of Action), breach of fiduciary duty (Sixth Cause of Action), violation of Florida's Deceptive and Unfair Trade Practices Act (Seventh Cause of Action), and breach of confidence (Eighth Cause of Action). *Id.* ¶ 6.

8. FOI disputes Plaintiffs' allegations, believes the Complaint lacks merit, and denies that the putative class meets the Rule 23 requirements for certification.

**BASIS FOR REMOVAL**

9. This action is within the original jurisdiction of this Court, and removal is therefore proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). In CAFA, Congress granted the federal courts diversity jurisdiction over putative class actions where: (1) the putative class action consists of at least 100 proposed class members (28 U.S.C. § 1332(d)(5)(B)); (2) the citizenship of at least one proposed class member is different from that of any defendant (28 U.S.C. § 1332(d)(2)(A)); and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interests and costs (28 U.S.C. §§ 1332(d)(2), (d)(6)). Each of these requirements is satisfied here.

10. **Covered Class Action:** This action meets the CAFA definition of a class action, which is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a)-(b).

11. **Class Action Consisting of More Than 100 Members:** Plaintiffs estimate their putative class "to be at or above 100,000." Compl. ¶ 80. In fact, the ransomware attack impacted the data of roughly 651,528 present or former FOI patients. *See* July 30, 2020 Declaration of Janene J. Culumber, (the "Culumber Decl."), attached as **Exhibit D**, at ¶ 5. The aggregate number of putative class members is thus well over the 100-person threshold for removal in 28 U.S.C. § 1332(d)(5)(B).

12.  **Minimal Diversity:** The minimal required diversity of citizenship under CAFA is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

13.  FOI is a citizen of Florida, is incorporated in Florida, and has its principal place of business in Tampa, Florida.

14.  The Complaint does not limit the putative class to citizens of Florida, but rather includes "[a]ll individuals in the United States..." Compl. ¶ 78.

15.  At least one member of the putative class is not a citizen of Florida. Specifically, Beverly Cline is a member of the putative class and is a citizen of Wisconsin. *See* July 29, 2020 Declaration of Beverly Cline, attached as **Exhibit E** (confirming that Ms. Cline is a Wisconsin citizen) and Culumber Decl. ¶ 7 (confirming that Ms. Cline is a member of the putative class).

16.  Accordingly, this removal satisfies CAFA's minimal diversity requirement.

17.  **Amount in Controversy:** Under CAFA, the claims of individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(6). FOI's burden on removal is merely to demonstrate a "plausible allegation" that there is at least $5,000,000, exclusive of interest and costs, in controversy. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold…. [N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."); *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (same). A "short and plain statement of the grounds for removal" is sufficient. *See VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, 2017 WL 3712918 at *3-5 (M.D. Fla. Mar. 7, 2017).

18.     The requests for relief contained in the Complaint exceed CAFA's $5 million threshold.

19.     FOI had roughly 651,528 present or former patients whose information was involved in the underlying ransomware attack. *See* Culumber Declaration ¶ 5. Simply dividing the $5 million figure by the number of individuals whose information was involved in the ransomware attack reveals that an amount in controversy of just $7.68 per individual is needed to surpass the $5 million threshold ($5,000,000/651,528 individuals = $7.674 per individual). Plaintiffs' broadly alleged losses and prayer for relief exceed $7.68 per individual.

20.     First, Plaintiffs' credit monitoring claim alone places at issue more than $5 million. Comp. ¶ 81(q). Courts have specifically looked to the cost of credit monitoring when evaluating CAFA jurisdiction in data breach cases. *See, e.g., McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (data breach litigation using $14.95 per month as estimated cost of credit monitoring for purposes of determining satisfaction of CAFA's amount in controversy threshold); *Fielder v. Penn Station Inc.*, 2013 WL 1869618 at *2 (N.D. Ohio May 3, 2013) (finding size of class and cost of credit monitoring sufficient to meet CAFA's $5 million amount in controversy requirement).

21.     Plaintiffs allege that FOI's provision of credit monitoring services was "woefully insufficient" because data breach victims "commonly face multiple years of ongoing identity theft." Compl. ¶¶ 65-66. One of the questions that Plaintiffs pose is "[w]hether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes." *Id*. ¶ 81(q). The cost of such identity theft monitoring for a single year, let alone for the entire lifetime of all implicated individuals, exceeds $7.68 per individual.

22. Within the Unites States, the cost of identity theft or credit monitoring protection services vary by provider and services provided. The three main credit reporting agencies advertise the following rates for such services on their respective websites:

   a. Equifax offers "Score Watch" for $14.95 per month, "Equifax ID Patrol" for $16.95 per month, and "Equifax Complete Premier" for $19.95 per month;

   b. Experian offers "IdentityWorks Plus" for $9.99 per month and "IdentityWorks Premium" for $19.99 per month. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020) (granting final approval in large data breach class settlement that used premium Experian credit monitoring services, and noting "[t]he Experian monitoring has a comparable retail value of $24.99 per month"); and

   c. TransUnion offers identity theft and credit monitoring for $24.95 per month.[1]

23. Courts have routinely considered the cost of such commercially available identity theft or credit monitoring protection services in evaluating whether CAFA's $5 million amount in controversy requirement is satisfied in data breach cases. *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) (calculating the amount in controversy as including $15.95 per month per putative class member for credit monitoring); *McLoughlin*, 586 F. Supp. 2d at 73 (using $14.95 per month per putative class member for credit monitoring).

24. Second, the Complaint alleges that "[a]s a consequence of the Data Disclosure, Plaintiffs and Class Members have suffered damages by taking measures to both deter and detect identity theft, …including, *inter alia*; placing 'freezes' and 'alerts' with credit reporting agencies,

---

[1] Copies of the Experian, Equifax, and TransUnion websites are attached as **Composite Exhibit F**. The Court may consider these items as part of FOI's "plausible allegation[s] that the amount in controversy exceeds the jurisdictional threshold." Evidence is not required at this time, and only ever required if "the plaintiff contests, or the courts question, such allegation[s]." *See Norris v. Freedom Life Ins. Co. of Am.*, 2020 WL 887707 at *1 n.2 (M.D. Fla. Feb. 24, 2020).

contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports," for which they deserve compensation. Compl. ¶ 60. It further alleges that Plaintiffs and Class Members will "continue to incur such damages in addition to any fraudulent use of their PII" for "years of constant surveillance of their financial and personal records." *Id.* ¶ 62.

25.  While FOI questions whether these type of damages are available, courts have approved settlement agreements that included these categories of damages. *See, e.g., Carroll v. Macy's, Inc.*, 2020 WL 3037067, at *6 (N.D. Ala. June 5, 2020); *In re Equifax*, 2020 WL 256132, at *2.

26.  Third, Plaintiffs contend that FOI "charge[d] consumers higher rates under the guise of enhanced security and information security practices" (*id.* ¶ 37) and that FOI's alleged "failure to meet its confidentiality and privacy obligations resulted in [FOI] providing goods and services to Plaintiffs and Class Members that were of a diminished value" (*id.* ¶ 152). Plaintiffs also claim that FOI "did not provide full compensation for the benefit Plaintiffs and Class Members provided" (*id.* ¶ 168), "should not be permitted to retain the money belonging to Plaintiffs and Class Members" (*id.* ¶ 167), and should be either "compelled to disgorge…proceeds that [it] unjustly received from them into a common fund or constructive trust" or "refund the amounts…overpaid" (*id.* ¶ 174).

27.  While these figures may be difficult to quantify, these are additional amounts in controversy. *See Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) (holding that in evaluating CAFA's amount in controversy, the removing party may "ask the court to make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim").

28. Fourth, Plaintiffs also seek to compel FOI "to use appropriate cyber security methods and policies with respect to PII collection, storage, and protection." *See* Compl. Prayer for Relief. Specifically, they demand that FOI: "engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis"; "correct any problems or issues detected"; "engage third-party security auditors and internal personnel to run automated security monitoring"; "audit, test, and train its security personnel"; "segment PII by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant's systems"; "purge, delete, and destroy in a reasonable secure manner PII not necessary for Defendant's provision of services"; "conduct regular database scanning and securing checks"; "routinely and continually conduct internal training and education…[on] how to identify and contain a breach when it occurs and what to do in response"; and "meaningfully educate its customers about the threats they face … as well as the steps …[they] should take to protect themselves." *Id*. ¶ 200. The costs of such relief quickly add up and, in other cases, have been estimated to exceed one billion dollars. *See, e.g.*, *In re Equifax*, 2020 WL 256132, at *3 ("requiring the company to spend a minimum of $1 billion for data security and related technology over five years").

29. The value of this relief is also considered in establishing CAFA's amount in controversy requirement. *See, e.g.*, *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) ("[F]or amount in controversy purposes,…the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.").

30. Finally, Plaintiffs seek, among other relief, (a) "an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;"

(b) attorney's fees; and (c) "[s]uch other and further relief as this Court may deem just and proper." *See* Compl. Prayer for Relief.

31.     Given the large putative class and many forms of relief requested, CAFA's amount in controversy threshold is plainly met.

## CONCLUSION

32.     This action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d). Accordingly, this action is removable pursuant to 28 U.S.C. § 1441(a) and § 1453.

## NOTICE TO STATE COURT AND ADVERSE PARTY

33.     Counsel for FOI certifies that pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal will be filed with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit of Florida, and served upon Plaintiffs' counsel.

Dated: August 3, 2020

*s/ Alan Rosenthal*
Alan Rosenthal (FBN 220833)
arosenthal@carltonfields.com
Natalie J. Carlos (FBN 0146269)
ncarlos@carltonfields.com
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Patricia M. Carreiro (FBN 1017952)
pcarreiro@carltonfields.com
Carlton Fields, P.A.
100 S.E. 2nd Street, Ste. 4200
Miami, Florida 33131-2114
(305) 530-0050

Joseph W. Swanson (FBN 29618)
jswanson@carltonfields.com
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, Ste. 1000
Tampa, Florida 33607-5780
(813) 223-7000

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Alan Rosenthal*

**Service List**

John A. Yanchunis
jyanchunis@ForThePeople.com
Ryan J. McGee
rmcgee@ForThePeople.com
Morgan & Morgan
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505

William "Billy" Peerce Howard
Billy@TheConsumerProtectionFirm.com
Heather H. Jones
Heather@TheConsumerProtectionFirm.com
Amanda J. Allen
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
(813) 500-1500

*Attorneys for Plaintiffs and the Proposed Class*

(Via E-mail and U.S. Mail)