**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Case No. 8:20-cv-01798-CEH (AAS)**

RAY STOLL, *et al.*,

     Plaintiffs,

v.

MUSCULOSKELETAL INSTITUTE,
CHARTERED,

     Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute ("FOI"), pursuant to Federal Rule of Civil Procedure 12(b)(6), requests the Court to enter an order dismissing each of the "Causes of Action" in Plaintiffs' Amended Complaint [ECF 88] for failure to state a cause of action:

1.    Negligence (Count I)

2.    Invasion of Privacy (Count II);

3.    Breach of Implied Contract (Count III);

4.    Negligence *Per Se* (Count IV);

5.    Unjust Enrichment (Count V);

6.    Breach of Fiduciary Duty (Count VI);

7.    Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VII); and

8.    Breach of Confidence (Count VIII).

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................ 1

II.  LEGAL STANDARD .................................................................................... 1

III.  MEMORANDUM OF LAW ........................................................................ 2

    A.  The putative class impermissibly includes members
        with no Article III standing. ................................................................ 2

    B.  The Negligence (Count I) and Breach of Implied Duty
        (Count III)  Claims Should Be Dismissed. ........................................ 4

        i.  There is no actionable duty or implied contract under
                HIPAA or the Privacy Policy as a matter of law .........................5

        ii.  Plaintiffs fail to allege reliance on the Privacy Policy. ...............7

        iii.  Plaintiffs fail to state a cause of action for implied
                 contract in fact ........................................................................... 8

        iv.  Plaintiffs fail to allege a contract implied in law ..................... 9

    C.  The Invasion of Privacy Claim (Count II) Should Be Dismissed ....... 10

        i.  There are no alleged facts regarding an "intrusion" into
                "private quarters." ................................................................... 10

        ii.  The Amended Complaint fails to allege that FOI
                "intentionally" publicized private information to a
                "large" number of people ......................................................... 11

    C.  The Negligence *Per Se* Claim (Count IV) Fails as a Matter
        of Law .............................................................................................. 13

    D.  The Unjust Enrichment Claim (Count V) Should Be Dismissed ....... 14

    E.  The Breach of Fiduciary Duty Claim (Count VI) should
        be dismissed. ................................................................................... 16

    F.  The FDUTPA Claim (Count VII) Should Be Dismissed .................... 17

        i.  The FDUTPA claim is based on unrecoverable damages ........ 17

      ii.    Plaintiffs fail to state a claim for declaratory and injunctive relief under FDUTPA .............................................. 20

   F.    The Breach of Confidence Claim (Count VIII) Should be Dismissed ........................................................................ 22

IV.   CONCLUSION........................................................................... 23

V.   CERTIFICATE OF GOOD-FAITH CONFERENCE..................................... 23

VI.   CERTIFICATE OF SERVICE ........................................................ 23

# I.
# INTRODUCTION

This is a putative "data breach" class action arising from an April 9, 2020 ransomware attack on FOI, a provider of orthopedic and related healthcare services.  The action is brought on behalf of "[a]ll individuals in the United States who are current or former patients or customers of [FOI]," whose "personally identifiable information" (PII) and "protected health information" (PHI) were allegedly "exposed and accessed" during the attack. ECF 88 at ¶1.

In accord with recent decisions in data breach cases — particularly *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (U.S. June 25, 2021); *I Tan Tsao, v. Captiva MVP Restaurant Partners, LLC,* 986 F.3d 1332 (11th Cir. Feb. 4, 2021); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. Oct. 28, 2020) (en banc); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *13 (M.D. Fla. Jan. 27, 2020); and *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359, 1368 (S.D. Fla. 2017) — every claim should be dismissed or substantially narrowed.

# II.
# LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, even when sufficiently pleaded, a claim is subject to dismissal if it is "facially implausible." *Stuart v. US*, 529 F. App'x. 992, 994, n. 2 (11th Cir. 2013) (citing *Iqbal*). Moreover, "the Court is not required to

accept as true a legal conclusion merely because it is labeled a 'factual allegation' in the complaint; it must also meet the threshold inquiry of facial plausibility." *McGinity v. TracFone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1339 (M.D. Fla. 2014) (citing *Iqbal*).

### III.
### MEMORANDUM OF LAW

**A.    The putative class impermissibly includes members with no Article III standing.**

As a threshold issue, recent U.S. Supreme Court and Eleventh Circuit Court of Appeal decisions mandate that the putative class — comprising every individual in the United States whose PII or PHI may have been compromised in the April 2020 attack — be substantially narrowed to exclude members with no Article III standing. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (noting "the district court will have to determine whether each of the absent class members has standing before they could be granted any relief").

Only putative class members who can demonstrate "concrete harm" can survive Article III standing requirements. *See Ramirez*, 141 S. Ct. at 2, 16-24 (substantially reducing class size by excluding members who did not suffer the "fundamental standing requirement" of "concrete harm"). Neither being "exposed" to an "increased risk" of future identity theft, nor initiating self-imposed measures to mitigate against the increased risk of identity theft, is sufficient to establish standing in data breach cases. *Tsao,* 986 F.3d at 25-26 (affirming dismissal of class action data breach complaint because plaintiffs could not

2

"manufacture" Article III standing through allegations that class members suffered injuries in connection with efforts to mitigate risk of potential identity theft); *Muransky*, 979 F.3d at 931 (exposure to "an elevated risk of identity theft" is insufficient to confer standing).

Here, the Amended Complaint impermissibly alleges that the putative class has suffered injuries from the April 2020 attack based either on (i) actual identity theft or (ii) **an increased risk** of identity theft. (*See* ECF 88 at ¶1 (alleging class members "will be at an increased risk of identity theft"); ¶3 (alleging that the class members "face a substantial increased risk of identity theft" posed by their PII being allegedly disclosed); ¶48 (alleging that the class members "are forever at risk of future misuse"); ¶59 (alleging that the class members are "at significant risk to identity theft"); ¶62 (alleging that class members will be "at a heightened risk of further identity theft and fraud"); ¶74 (listing damages that the class members either suffered "or are at increased risk of suffering," including the "continued risk to their PII. . . in the possession of [FOI]"); ¶79 (claiming PHI and PII "remains at risk of subsequent data disclosure"); and ¶¶ 111, 115, 116, 156, 164, 175, 193, 172, 190, and 219 (noting increased "risks" of harm)).

The named Plaintiffs also allege that putative class members have suffered damages through their **self-imposed mitigation efforts** to prevent and detect "potential" identity theft or fraud. (*Id.* at ¶¶ 61, 74(g), 116, 156).

These allegations of potential or increased harm, or injuries based on mitigation efforts, permeate throughout the Amended Complaint and into each

cause of action, thereby impermissibly including members within its putative class that have no Article III standing because they did not suffer actual identity theft or other concrete harms. *See Ramirez*, 141 S. Ct. at 2, 16-24; *Tsao,* 986 F.3d at 25-26; *Muransky*, 979 F.3d at 931.

Indeed, the reason Plaintiffs amended the initial Complaint (ECF 1-1) to include, as a named Plaintiff, B.W., a six-year old minor who allegedly had her identity stolen, was because the other named Plaintiffs, Ray Stoll and Heidi Imhof, did **not** suffer actual identity theft or concrete harm. ECF 44-3 (providing computations for only three types of damages: (i) "value" of lost time; (ii) reimbursement of Plaintiff Stoll's unbilled accountant's fees; and (iii) the cost of life-long credit monitoring); ECF 60 at 6 (arguing that, even if Plaintiffs Stoll and Imhof lack Article III standing under *Tsao* because they did not suffer actual identity theft, they should be permitted to amend the Complaint to add or substitute the putative class representative).

The Court should either dismiss the Amended Complaint, or strike all allegations that would impermissibly include putative class members who lack Article III standing, which would include Plaintiffs Stoll and Imhof.

## A.     The Negligence (Count I) and Breach of Implied Duty (Count III) Claims Should Be Dismissed.

The negligence claim is based on a purported duty of FOI to (i) "exercise reasonable care in safeguarding, securing, and protecting" PII and PHI from being "compromised, lost, stolen, misused, and/or disclosed to unauthorized parties" (ECF 88 at ¶99); (ii) "have procedures in place to detect and prevent improper

4

access and misuse of Plaintiffs' PII" (¶100); (iii) notify and "adequately disclose" to its patients that their PII may have been compromised (¶106); and (iv) "employ proper procedures to prevent" the April 2020 attack (¶107). Those purported duties allegedly arise either from HIPAA (¶¶1, 4, 50, 75, 76, 77, 78, 79) or by "express" contract via FOI's Privacy Policy (¶131, 132, 133, 134).

Similarly, Plaintiffs allege that FOI breached an implied contract with them based on FOI's "express" and "written" "promises" to abide by HIPAA and its own Privacy Policy. ECF ¶¶125-151. According to Plaintiffs, a "meeting of the minds occurred" for FOI to comply with HIPAA and its Privacy Policy, and "[w]ithout such implied contracts, Plaintiffs and Class Members would not have provided their protected health information and other PII to Defendant." (*Id.* at ¶¶132, 150).

However, neither HIPAA violations nor breaches of FOI's Privacy Policy can, standing-alone, support a negligence or breach of implied contract claim.

### i.   There is no actionable duty or implied contract under HIPAA or the Privacy Policy as a matter of law.

There is no private right of action for HIPAA violations. *See Sneed v. Pan American Hosp.*, 370 F. App'x. 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates a private cause of action."); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015); *Brush*, 238 F. Supp. 3d at 1368 ("Plaintiff cannot manipulate the common law to state a private, statutory cause of action [under HIPAA] where none exists."); *McBride v. Guzina*, 2021 WL 4710776, at *5 (M.D. Fla. 2021) ("[T]here is no federal cause of action allowing an individual to sue for a violation of the federal HIPAA or any of its

regulations"). Thus, Plaintiffs "cannot create a private right of action for violations of HIPAA by recasting [their] claims as common law, implied contract claims." *Brush*, 238 F. Supp. 3d at 1369.[1]

Nor can Plaintiffs recast the alleged HIPAA violations into a common law action for negligence.  *See id.; see also McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200 (M.D. Fla. 2013) (dismissing negligence claim because "'[n]o private right of action exists under the [statute]. Plaintiffs cannot make an end run around this rule by recasting violations of the [statute] as violations of state common law.'") (quotation omitted); *Hucke v. Kubra Data Transfer, Corp.*, 2015 WL 10097623, at *6 (S.D. Fla. Nov. 9, 2015) (common law claim based on Florida statute with no private right of action would "essentially allow an end-run around the . . . decision not to provide a statutory cause of action."); *Dunbar v. Biedlingmaier,* 2021 WL 3129310, at *4 (D. Md. July 23, 2021) ("[T]the bar on a private right of action to enforce HIPAA cannot be circumvented through a negligence claim based on an alleged HIPAA violation."); *Skinner v. Tel-Drug, Inc.*, 2017 WL 1076376, at *3 (D. Ariz. Jan. 27, 2017) ("[T]o the extent that HIPAA universally has been held not to authorize a private right of action, to permit HIPAA regulations to define *per se* the duty and liability for breach is no less than

---

[1] *But see Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327 (11th Cir. 2012) (ruling plaintiff sufficiently alleged causation for breach of implied contract based on alleged evidence that data breach resulted in an actual identity theft).  *Resnick* is irrelevant here. The focus in *Resnick* was the sufficiency of alleged damages flowing from an "actual" identity theft that occurred after a cyber-ware attack.  *Resnick* neither discussed HIPAA nor the language of the defendant's privacy policy, nor analyzed whether an implied contract can arise from violating HIPAA or policy language.

a private action to enforce HIPAA, which is precluded."); *Haywood v. Novartis Pharmaceuticals Corp.*, 298 F.Supp.3d 1180, 1191 (N.D. Ind. 2018) (noting that "state law claims that rely on HIPPA as the basis for establishing negligence are not cognizable because utilizing them in such a way would circumvent HIPPA's enforcement mechanisms"); *Gallipeau v. Correct Care Solutions*, 2011 WL 4502062, at *4 (D.S.C. 2011) (dismissing claim alleging that defendants "breached a duty of care by allegedly violating HIPAA and unspecified state statutes" because "HIPAA does not provide for a private cause of action against Defendants").

This rule applies equally to FOI's Privacy Policy. Internal privacy policies to protect patients' PII do not give rise to implied contracts because they "are not contractual in nature," and are used only to "inform patients of their rights under federal law—specifically [HIPAA]—and the duties imposed ... by these statutory provisions." *Brush*, 238 F. Supp. 3d at 1367. *See also J.R. v. Walgreens Boots Alliance, Inc.*, 2020 WL 3620025, at *14 (D.S.C. 2020) (citing *Brush* and dismissing implied contract claim based on alleged promise in privacy notice to abide by HIPAA guidelines).

Therefore, as a matter of law, no actionable duty or implied contract can exist independently from FOI's obligations to comply with HIPAA and its own Privacy Policy to adhere to HIPAA.

### ii.    Plaintiffs fail to allege reliance on the Privacy Policy.

The Amended Complaint fails to allege that Plaintiffs read and relied on FOI's Privacy Policy, which is found on FOI's website (ECF 88 at ¶¶ 4-5), before

seeking its services or submitting their PII. *See, e.g., Willingham v. Global Payments, Inc.*, 2013 WL 440702, at \*20 (N.D. Ga. 2013) (noting "[b]road statements of reliance on a defendant's website and privacy statement do not give rise to contract claims where, as here, Plaintiffs do not allege that they read and relied upon those statements") (citing *Dyer v. Northwest Airlines Corps.,* 334 F. Supp. 2d 1196, 1199–1200 (D.N.D. 2004) (dismissing breach of contract claim because plaintiffs did not allege that they logged on to defendant's website to read defendant's privacy policy)); *In re Northwest Airlines Privacy Litig.,* 2004 WL 1278459, at 5–6 (D. Minn. June 6, 2004) (finding no contract where plaintiffs alleged they "relied to their detriment" on defendant's privacy policy, but failed to allege that they actually read it before submitting their PII).

The failure to allege reliance on the Privacy Policy is fatal to Plaintiffs' implied contract claim. *See id.*

### iii.   Plaintiffs fail to state a cause of action for implied contract in fact.

In Florida, a contract may be implied in fact or law. *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359, 1368 (S.D. Fla. 2017). A contract implied in fact "is based on a tacit promise" that is "inferred in whole or in part from the parties' conduct." *Id.* at 1369 (citations omitted). A contract implied in law, or *quasi* contract, is based on unjust enrichment principles "without regard to the parties' expression of assent by their words or conduct." *Id.* Thus, to establish a contract implied in law, the elements of unjust enrichment must be pleaded. *Id.*

8

Although the Amended Complaint fails to identify the implied contract theory upon which it is based, dismissal is warranted under either theory.

The Amended Complaint does not allege that FOI made a "tacit promise" to protect Plaintiffs' PII that is independent of its obligations under HIPAA and that can be "inferred in whole or in part" from FOI's "conduct." *Brush*, 238 F. Supp. 3d at 1369.

Rather, Plaintiffs' breach of implied contract claim is similar to the one dismissed in *Brush*, which alleged that the breaches arose from HIPAA requirements, and "not data security services beyond the privacy requirements already imposed on the Defendants by federal law":

> In this case, the Plaintiff checked into the Defendants' healthcare facility to obtain medical treatment. Nothing in the Plaintiff's Complaint gives rise to a factual inference that the Defendants tacitly agreed to secure her personal data in exchange for remuneration. It is clear from the Plaintiff's allegations that she transacted to receive healthcare services from the Defendants—not data security services beyond the privacy requirements already imposed on the Defendants by federal law. Accordingly, the Court cannot imply a contract to provide data security services based on the conduct of the parties.

*Brush*, 238 F. Supp 3d at 1369.  Here, Plaintiffs allege no facts asserting that FOI's conduct established any duties beyond those already required by HIPAA.

### iv.    Plaintiffs fail to allege a contract implied in law.

Count III of the Amended Complaint fails to allege any unjust enrichment. In the absence of such allegations, Count III should be dismissed. *See Brush*, 238

F. Supp. 3d at 1369 (dismissing implied *quasi* contract claim for failing to allege unjust enrichment elements).

**B.      The Invasion of Privacy Claim (Count II) Should Be Dismissed.**

Florida law recognizes three distinct types of invasion of privacy: "(1) appropriation, the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion, physically or electronically intruding into one's private quarters; and (3) public disclosure of private facts, the dissemination of truthful private information which a reasonable person would find objectionable." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003).

Plaintiffs' Amended Complaint appears to implicate the second and third types: intrusion into private quarters and publication of private facts. However, the Amended Complaint fails to allege facts to support either theory.

**i.      There are no alleged facts regarding an "intrusion" into "private quarters."**

The Amended Complaint alleges that FOI "allowed unauthorized and unknown third parties unfettered access to and examination of the PII of Plaintiffs…by way of Defendant's failure to protect the PII from unauthorized disclosure." ECF 88 at ¶122. According to Plaintiffs, this purported "**intrusion** was into a place or thing, which was private and is entitled to be private." *Id.* ¶124 (emphasis added). However, to adequately plead facts supporting an intrusion claim, Plaintiffs must demonstrate that FOI's action amounted to a physical or electronic intrusion into their "**private quarters**." *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011) (emphasis added) ("Florida law explicitly

requires an intrusion into a private place and not merely into a private activity."). Plaintiffs do not identify any specific place that FOI intruded upon or to which they had any right to privacy.

Moreover, unauthorized access to personal medical information and other digital files is **not** an "intrusion" under Florida privacy law. *See Bradley v. City of St. Cloud*, 2013 WL 3270403, at *5 (M.D. Fla. June 26, 2013) (dismissing invasion of privacy claim based on allegations that the defendant had viewed plaintiff's medical records without her authorization because she failed to "allege that [d]efendants intruded into her home or another private place"); *Hall v. Sargeant*, 2019 WL 1359485, at *8 (S.D. Fla. Mar. 26, 2019) (finding that "neither [an] Email Account nor the individual digital files containing the emails and attachments is the kind of 'private quarter' or 'place' that can be the basis for invasion of privacy by intrusion under Florida law"); *Watts v. City of Hollywood, Florida*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015) (accessing driver's license information from a state database is not an intrusion into a "place").

### ii. The Amended Complaint fails to allege that FOI "intentionally" publicized private information to a "large" number of people.

If Plaintiffs are claiming that FOI tortiously published private facts, the publication must be to a "large number of persons" rather than just to an individual or a few persons. *See Steele v. Offshore Building, Inc.*, 867 F.2d 1311 (11th Cir. 1989) ("In Florida…the tort of invasion of privacy must be accompanied by publication to the public in general or to a large number of persons"); *Lewis v. Snap-on Tools*

*Corp.*, 708 F. Supp. 1260, 1261-62 (M.D. Fla. 1989) ("Generally, the right of privacy is violated by the publication of private material or matters, of which there is no legitimate concern of the public, to the public in general or to a large number of persons, rather than an individual or a few.").

Here, the Amended Complaint is based on a single ransomware attack into FOI's systems by a third-party hacker, which allegedly resulted in the exposure of Plaintiffs' "sensitive and private PII." ECF 88 at ¶2.  There are no allegations that FOI intentionally published its patients' PII to the public, or even to the hacker for the purpose of disseminating the PII.  The statement that the ransomware attack was an "intentional interference" into Plaintiffs' privacy is legally insufficient. *See Purelli v. State Farm & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997) ("Florida courts have recognized invasion of privacy to be an intentional tort"); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *4 (S.D. Fla. Oct. 18, 2012) (dismissing invasion of privacy claim in data breach action because the plaintiff failed to allege that the defendants "intentionally divulged his PII"); *see also Burton v. MAPCO Express, Inc.*, 47 F. Supp. 3d 1279, 1288 (N.D. Ala. 2014) (finding in a data breach case that the plaintiffs' invasion of privacy claim failed because "[u]nder Alabama law,[2] invasion of privacy is an intentional tort" and the complaint did not allege "an intentional act of divulging . . . confidential information.").

---

[2] Both Alabama and Florida require intentional conduct for invasion of privacy claims.

The invasion of privacy claim (Count II) should be dismissed.

**B.     The Negligence *Per Se* Claim (Count IV) Fails as a Matter of Law.**

Plaintiffs' negligence *per se* claim is based on alleged violations of the Federal Trade Commission Act (the "FTC Act"). ECF 88 at ¶¶158-162.  However, "[t]here is no private cause of action implied under the [FTC Act]…Thus, violation of the FTC Act cannot be the basis for a negligence per se claim." *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020) ("*Brinker I*") (internal quotation marks and citations omitted). *See also In re Community Health Sys., Inc.*, 2016 WL 4732630, at 26-27 (N.D. Ala. Sept. 12, 2016) (dismissing negligence *per se* claim under Florida law because neither HIPAA, nor the FTC Act, provide a private right of action and "the laws of Florida prohibit plaintiffs from pursuing negligence *per se* claims based on statutes that provide no private right of action"); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365-66 (S.D. Fla. Nov. 17, 2015) ("Florida courts have refused to recognize a private right of action for negligence *per se* based on an alleged violation of a federal statute that does not provide for a private right of action") (citing *Jupiter Inlet Corp. v. Brocard*, 546 So. 2d 1, 2-3 (Fla. 4th DCA 1998)).[3]

Plaintiffs' negligence *per se* claim should be dismissed.

---

[3] The Amended Complaint appears to allege HIPAA violations as an additional basis for Plaintiffs' negligence *per se* claim. (*See* ECF 88 at ¶¶75-78, 158). If so, the same lack of a private right of action that bars Plaintiffs' FTC Act claim also bars Plaintiffs' HIPAA-based claim. *See In re Community Health Sys., Inc.*, 2016 WL 4732630, at 26-27 (N.D. Ala. Sept. 12, 2016); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365-66 (S.D. Fla. Nov. 17, 2015).

**D.      The Unjust Enrichment Claim (Count V) Should Be Dismissed.**

Plaintiffs have failed to properly plead unjust enrichment. Unjust enrichment requires that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Brinker I*, 2020 WL 691848, at *10 (citing *Resnick*, 693 F.3d at 1328).

For the first element, Plaintiffs offer two theories to support a conferral of benefit: (i) an overpayment theory (that the plaintiffs overpaid for the services they received) (ECF at ¶¶168-70, 177) and (ii) a "wouldn't have shopped" theory (that the plaintiffs would not have purchased FOI's services if they had known of the company's allegedly insufficient data security). (*Id.* ¶173).

However, to support an unjust enrichment claim, the benefit conferred must not be merely incidental to what the plaintiff sought. *See Brinker I,* 2020 WL 691848, at *11 (*quoting Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("Irwin paid for good products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase.")).

Clearly, Plaintiffs went to FOI to obtain orthopedic and related healthcare services, not data security. And they received exactly what they paid for: orthopedic care. The protection of PII is merely incidental to their purchase of healthcare

14

services. Indeed, Plaintiffs essentially admit that they purchased "goods and services" from FOI, not data security:

> [Plaintiffs] purchased goods and services from Defendant and provided Defendant with their PII...Plaintiffs and Class Members should have received from Defendant the goods and services that were the subject of the transaction **and** should have been entitled to...adequate data security.

ECF 88 at ¶164 (emphasis added). This mirrors the allegations dismissed in *Brinker I*, where data privacy was found to be incidental to the plaintiffs' purchase:

> [T]hey [Plaintiffs] purchased goods and services from Brinker and provided Brinker with their payment information...Plaintiffs and Class members should have received from Brinker the goods and services that were the subject of the transaction and should have been entitled to...adequate data security.

Compl. ¶ 168, *Green-Cooper v. Brinker Int'l, Inc.*, 3:18-cv-00686-TJC-MCR (M.D. Fla. May 24, 2018) (ECF 1).

Limited exceptions have been made where defendants contractually and expressly "guaranteed" data privacy to their customers, in addition to alleging that a portion of the payment to the defendant was allocated to data security. *See, e.g.*, *Resnick*, 693 F.3d at 1328. Without such allegations, the unjust enrichment claim fails. *See Brinker I*, 2020 WL 691848, at *10 (distinguishing *Resnick* on this basis and dismissing an unjust enrichment claim).

The Amended Complaint does not allege a contractual guarantee. Moreover, although the Amended Complaint references FOI's "Privacy Policy" to comply with HIPAA (ECF 88 ¶¶ 1, 2, 36-38), Plaintiffs do not allege that they read and relied on the Privacy Policy on FOI's website, or that they chose to seek treatment at FOI

because of such policy. *Cf. Willingham v. Global Payments, Inc.*, 2013 WL 440702, at *20 (N.D. Ga. 2013) (noting "[b]road statements of reliance on a defendant's website and privacy statement do not give rise to contract claims where, as here, Plaintiffs do not allege that they read and relied upon those statements").

Moreover, the "wouldn't have shopped" theory is only appropriate where a defendant knew of the breach at the time they collected the PII, thus making the defendant's keeping of the monies paid unjust. *See, e.g., Brinker I,* 2020 WL 691848, at *11 ("*Target* appears to be an outlier among data breach cases in recognizing the 'would not have shopped' theory, which is likely attributable to the unique circumstance that Target allegedly knew about the breach as it was ongoing"). Here, there is no allegation that FOI knew of the breach at the time it collected Plaintiffs' information.

Finally, Plaintiffs have offered only conclusory allegations that FOI knew of the benefit allegedly conferred, accepted it, and that it would be inequitable for FOI to keep that benefit. ECF 88 at ¶¶167, 170. Conclusory allegations of knowledge, acceptance of a benefit, and profiting from a plaintiff's business are insufficient and justify dismissal. *See Brinker I,* 2020 WL 691848, at *11.

The unjust enrichment claim (Count V) should be dismissed.

## E.   The Breach of Fiduciary Duty Claim (Count VI) should be dismissed.

Plaintiffs' Breach of Fiduciary Duty claim relies heavily on violations of HIPAA to allege a fiduciary duty of care and breach of that duty. ECF 88 at ¶¶178,

182-192.  For the same reasons that HIPAA violations cannot form the bases of negligence or implied contract claims (*supra* at p. 5-7), so too must this claim fail.

**F.     The FDUTPA Claim (Count VII) Should Be Dismissed.**

>        **i.     The FDUTPA claim is based on unrecoverable damages.**

Only **actual** damages are recoverable for FDUTPA violations, not consequential damages. *See* § 501.211(2), Fla. Stat. (2019); *Brinker I*, 2020 WL 691848, at *13 (observing that FDUTPA "entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services.")(citing *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 6 (Fla. 4th DCA 2009)).

Plaintiffs allege that they "suffered actual damages by paying a premium for Defendant's goods and services with the understanding that at least part of the premium would be applied toward sufficient and adequate information security." ECF 88 at ¶202. However, the list of monetary damages incorporated into the FDUTPA count (*id.* ¶195) includes:

- Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

- Lost opportunity costs and lost wages associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;...

- Costs associated with placing freezes on credit reports; ... and

17

- Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Disclosure for the remainder of the[ir] lives.

*See id.* ¶ 74(f)-(h), (n).

All of these are prohibited consequential damages under FDUTPA. *See Brinker I*, 2020 WL 691848, at *13 (reviewing the case law establishing that FDUTPA does not allow consequential damages and finding that "Plaintiffs [did] not allege damages recognized under FDUTPA because unauthorized charges, lost time, and lost cash-back rewards are all consequential damages."); *Schauer*, 5 So. 3d, at 7 (holding, in a FDUTPA case, that damages to one's credit rating are consequential); *Mendez v. JFK Med. Ctr. Ltd. P'ship*, 2018 WL 6448384, at *4 (S.D. Fla. Oct. 19, 2018) (finding that denial of credit card application is consequential damages under FDUTPA); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2014 WL 11775929, at *5 (S.D. Fla. June 4, 2014) (finding that damages such as costs for repairs and other remediation are consequential and not recoverable as actual damages under FDUTPA).

A court in this District has rejected, as impermissible consequential damages, the one theory of monetary damages that is specifically mentioned in Plaintiffs' FDUTPA count: "paying a premium for Defendant's goods and services with the understanding that at least part of the premium would be applied toward sufficient and adequate information security" (ECF at ¶ 202):

Plaintiffs' allegation that they "overpaid for the goods and services provided by Defendant because they would not have dined at Chili's had Defendant disclosed its inadequate data security" also fails. The "property that is the subject of the consumer transaction" is the food

18

or drinks that Plaintiffs purchased. § 501.212(3). In the same way that loan payments and interest are consequential costs of financing the purchase of a car or boat, so too is data security for payment information in purchasing food at a restaurant using a credit card. Ultimately, the food or drink purchased has no diminished value because of [Defendant's] alleged inadequate data security; Plaintiffs' personal information is merely "other property" that was damaged as a result of purchasing food or drinks from [Defendant]. FDUTPA entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services.

*Brinker I*, 2020 WL 691848, at *13 (internal citation omitted).

The same result should follow here. Just as the "goods or services" at issue in *Brinker I* were the food and beverages from Chili's,[4] the "goods or services" here were the medical services from FOI. Said more simply: consumers go to Chili's for chips and margaritas and they go to FOI for medical treatment; they do not go to either for data protection. *See also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 975 (S.D. Cal. 2014) (finding that a FDUTPA claim in a data breach case cannot proceed without articulating an independent monetary value of personal information affected by the breach).

These damages are also remote and speculative. Under FDUTPA, "causation is a necessary element of the FDUTPA claim, and causation must be direct, rather than remote or speculative." *Lombardo v. Johnson & Johnson Consumer Companies*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (dismissing claim based

---

[4] The named defendant in *Brinker I* was Brinker International Inc., which is the parent company of the Chili's restaurant chain. *See Brinker I*, 2020 WL 691848, at *14, n.15.

on alleged overpayment for failure to allege that deception was what caused plaintiff to pay a higher price) (internal quotation marks omitted).

### ii.   Plaintiffs fail to state a claim for declaratory and injunctive relief under FDUTPA.

Plaintiffs' request for declaratory and injunctive relief under FDUTPA (ECF 88 ¶203), is without merit, particularly because their damages are legally insufficient. The Court recently dealt with this issue in the *Brinker* data breach class action. After a ruling that their FDUTPA damages were impermissibly consequential, the plaintiffs tried to save part of their FDUTPA claim by arguing that they should at least be permitted to pursue declaratory and injunctive relief because FDUTPA provides a broad "anyone aggrieved standard." The Court rejected this argument, finding that the plaintiffs had to allege that they were aggrieved, and the threat of future injury was too speculative. *In re Brinker Data Incident Litig.*, 2020 WL 4287270, at *4 (M.D. Fla. July 27, 2020) ("*Brinker II*").

While there is some contrary case law,[5] the weight of authority is that FDUTPA's language allowing "anyone aggrieved" to bring an action for declaratory and injunctive relief "cannot supplant Constitutional standing requirements." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015); *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 2014 WL 10044838, at *6 (S.D. Fla. Sept. 10, 2014) ("Although FDUTPA allows plaintiffs to pursue

---

[5] *See, e.g.*, *KLS Martin, Inc. v. Med. Modeling, Inc.*, 2018 WL 8139133 (M.D. Fla. Dec. 17, 2018).

injunctive relief even where the individual plaintiff will not benefit from an injunction, it does not displace Constitutional standing requirements."); *In re Monat Hair Care Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) ("Because Plaintiffs fail to allege the threat of future harm, they have no constitutional standing to seek injunctive relief under FDUTPA or the alternate state consumer protection claims."); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363, 2018 WL 4932871, at *4 (S.D. Fla. Apr. 23, 2018) (dismissing FDUTPA claim for injunctive relief where plaintiff failed to establish a threat of future harm); *Teggerdine v. Speedway LLC*, 2018 WL 583114, at *2 (M.D. Fla. Jan. 26, 2018) (same); *Hardy v. Bed Bath & Beyond, Inc.*, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018) (same); *In re Monat Hair Care Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) (same).

Moreover, in *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324 (11th Cir. 2020), the Eleventh Circuit rejected the plaintiffs' FDUTPA equitable relief claim, noting that "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.* at 1329, n.4. *See also Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (rejecting "future harm" theory for injunctive relief claim under New York analog to FDUTPA).

Plaintiffs' FDUTPA claim should be dismissed, both as to damages for past conduct and for injunctive and declaratory relief as to future conduct.

**F.      The Breach of Confidence Claim (Count VIII) Should be Dismissed.**

"A common law breach of confidence lies where a person offers private information to a third party in confidence and the third party reveals that information." *Brinker I*, 2020 WL 691848, at *21 (quoting *Muransky*, 922 F.3d at 1190–91).

This Court already held in *Brinker I* that, in Florida, there is no cognizable claim for breach of confidence based on a third-party hacking into a private computer network:

> But Brinker did not do any act that made Plaintiffs' information known—the information was stolen by third-parties. Even assuming, arguendo, that Brinker's inadequate security facilitated the theft, such a claim would lie in negligence not breach of confidence. Simply put, Brinker made no disclosure, thus, this [breach of confidence] count is due to be dismissed.

*Brinker I*, 2020 WL 691848, at *21. Here, Plaintiffs acknowledge that the PII was stolen from FOI.  Thus, as in *Brinker I*, FOI could not have breached Plaintiffs' confidence and Count VIII of the Amended Complaint should be dismissed.

## IV.
## CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint, and grant such other relief as the Court deems just and proper.

Dated:  October 22, 2021

*s/ Alan Rosenthal*
Alan Rosenthal (FBN 220833)
arosenthal@carltonfields.com
Natalie J. Carlos (FBN 0146269)
ncarlos@carltonfields.com
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
100 S.E. 2nd Street, Ste. 4200
Miami, Florida 33131
(305) 530-0050

Joseph W. Swanson (FBN 29618)
jswanson@carltonfields.com
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, Ste. 1000
Tampa, Florida 33607
(813) 223-7000

*Attorneys for Defendant*

## CERTIFICATE OF GOOD-FAITH CONFERENCE

Pursuant to M.D. Fla. Local Rule 3.01(g), undersigned counsel certifies that he conferred with Plaintiffs' counsel on October 21, 2021 concerning the issues raised in this Motion, and that the parties were unable to resolve the issues.

*s/ Alan Rosenthal*

23

## CERTIFICATE OF SERVICE

I certify that on October 22, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*s/ Alan Rosenthal*