# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| RAY STOLL, HEIDI IMHOF, and CHASE WHITMAN, on behalf of B.W., a minor child, individually and on behalf of all others similarly situated, | Case No.: 8:20-cv-01798-CEH (AAS) |
| Plaintiffs, | |
| v. | |
| MUSCULOSKELETAL INSTITUTE, CHARTERED d/b/a FLORIDA ORTHOPAEDIC INSTITUTE, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, Ray Stoll, Heidi Imhof, and Chase Whitman ("Plaintiffs" or "Settlement Class Representatives"), respectfully move for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I. INTRODUCTION

On or about June 18, 2020, Defendant, Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute ("Defendant" or "FOI") disclosed that on or about April 9, 2020, it experienced a ransomware attack resulting in potential exposure of sensitive and private Personal Information of certain of its current and former patients (the "Data Security Incident").

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is attached hereto as **Exhibit A**.

On June 30, 2020, Plaintiffs filed a proposed class action lawsuit in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, relating to a Data Security Incident. On or about August 3, 2020, Defendant removed this matter to the U.S. District Court for the Middle District of Florida.

Thereafter, the parties engaged in extensive motion practice, including Defendant's Motion to Strike Plaintiffs' Amended Initial Disclosures (Doc's 29, 34, 38), Plaintiffs' Motion to Compel Full and Complete Discovery Responses and for Determination of Waiver (Doc's 46, 51, 78), Defendant's Motion to Stay (Doc's 55, 60, 79), Defendant's Motion to Quash (Doc. 58), Plaintiffs' Motion to file Amended Complaint (Doc's 59, 75), and Defendant's Motion to Dismiss (Docs. 89, 91).

On November 6, 2020, the parties engaged in mediation with mediator, Rodney A. Max. The parties also exchanged detailed mediation briefs with their respective positions on the merits of the claims and class certification. On February 18, 2021, the Court entered a stay of this matter pending a decision from the United States Supreme Court in *Transunion v. Ramirez*, as well as a decision from the Eleventh Circuit in *Tsao v. Captiva MVP Rest. Partners, LLC*, (Doc. 79). On July 14, 2021, Plaintiffs moved to lift that stay, following entry of the Supreme Court's decision in *Transunion* and the Eleventh Circuit's decision in *Tsao*, (Doc. 80), which was granted, (Doc. 82). Following lifting of the stay, the parties resumed mediation discussions with Mr. Max. After extensive arm's length settlement negotiations, the parties reached an agreement.

The parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were negotiated between them. Those terms are

memorialized in the Settlement Agreement and Release, which are set forth more fully below, and attached hereto as **Exhibit A** ("Settlement Agreement" or "S.A."). This Settlement Agreement provides for the resolution of all claims asserted, or that could have been asserted, against Defendant relating to the Data Security Incident, by and on behalf of Plaintiffs and Settlement Class Members.

The Settlement provides for the creation of a $4,000,000.00 Settlement Fund that will be used to pay for all resolution related sums, including: (i) Notice and Administrative Expenses; (ii) Identity Theft Protection Services; (iii) Identity Restoration Services; (iv) Minor Monitoring Services; (v) reimbursement for Out-of-Pocket Losses and Attested Time; and (iv) Attorneys' Fee Award and Costs; amongst other things. *See* S.A. ¶ 49. Notably, "[n]o portion of the Settlement Fund shall revert or be repaid to Defendant after the Effective Date." S.A. ¶ 63; *see also id.* ¶ 46.

## II. BACKGROUND

### A. Information About the Settlement

The parties agreed on and retained Rod Max, a highly experienced mediator, to assist the parties with settlement negotiations. Declaration of John A. Yanchunis, attached as **Exhibit B** ("Yanchunis Decl."), ¶ 16. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On November 6, 2020, the parties had a full-day mediation session with Mr. Max. *Id.* ¶ 16. The negotiations were hard-fought throughout and the process was conducted at arm's length. *Id.* The matter did not resolve during the mediation session.

Rather, on February 18, 2021, the Court entered a stay, (Doc. 79), and on July 14, 2021, Plaintiffs moved to lift that stay, which was granted, (Doc. 82).

Following lifting of the stay, the parties resumed mediation discussions with Mr. Max. Yanchunis Decl. ¶ 16. After extensive arm's length settlement negotiations conducted through Mr. Max and directly between the parties, the parties reached an agreement on the essential terms of settlement. *Id.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 19.

Based on Plaintiffs' counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by Defendant, Plaintiffs' counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

### B. The Terms of the Settlement Agreement

### 1. The Settlement Class

The proposed Settlement Class is defined as the:

> approximately 647,000 individuals identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Defendant that their Personal Information was or may have been compromised in the Data Security Incident initially disclosed by Defendant in or about June 2020. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct

families; (2) the Defendant, its subsidiaries, parent companies, management companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

S.A. ¶ 38.

## 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Out-of-Pocket Losses for up to $15,000.00;

- Reimbursement of Attested Time up to five (5) hours at twenty-five dollars ($25) per hour;

- Three (3) years of Identity Theft Protection Services provided by Pango f/k/a Aura, regardless of whether the Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses or Attested Time;

- Automatic eligibility to access fraud assistance/identity restoration services offered through Pango f/k/a Aura for a period of three (3) years from the Effective Date, regardless of whether a claim is submitted under the Settlement;

- Participating Settlement Class Members under the age of eighteen (18) on or before the Claims Deadline are automatically eligible to enroll in Minor Monitoring Services provided by Pango for a period of three (3) years from the Effective Date, regardless of whether they submit a claim under the Settlement.

S.A. ¶¶ 51, 53, 56–58.

Participating Settlement Class Members are subject to an individual aggregate cap of $15,000.00. Thus, Participating Settlement Class Members may submit claims for reimbursement of Attested Time and/or Out-of-Pocket Losses but the combined claims will be subject to the individual aggregate cap of $15,000.00. S.A. ¶ 66.

The Identity Theft Protection, Minor Monitoring, and fraud assistance/identity restoration services to be provided by Pango under the Settlement are robust and important. The retail cost of buying the same Identity Theft Protection Services would be $180.00 per person per year for 1 year of service and $540.00 per person for 3 years of service. These services are being provided under the Settlement for a total cost of $1,172,500.00 to be drawn from the Settlement Fund. *See* Declaration of Gerald Thompson, attached as **Exhibit C**.

### 3. Proposed Notice Program

Pursuant to the Settlement Agreement, the parties propose Epiq to be appointed as Settlement Administrator. Epiq is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which the parties and Epiq believe is an effective program.

Subject to Court approval, this Notice program involves direct notice disseminated via e-mail to Settlement Class Members whose personal e-mail addresses are available within Defendant's records, and via U.S. mail to all Settlement Class members whose personal e-mail addresses are not available within Defendant's records. S.A. ¶ 69.[2] The forms of Notice are attached as Exhibit 1 to the Settlement Agreement. A declaration from Mr. Cam Azari with additional details about the Notice Program is attached hereto as **Exhibit D** ("Azari Decl.").

Finally, Epiq will also establish a Settlement Website. S.A. ¶¶ 43, 72.d. In

---

[2] Class Counsel may also direct Epiq to send reminder notices any time prior to the Claims Deadline.

addition to the Notice, the website will include information about the Settlement, related case documents, and the Settlement Agreement. Settlement Class Members will also be able to submit claims electronically.

Notice of the Settlement will be given to the Settlement Class no later than thirty (30) days from the date of the Court's Preliminary Approval Order, (S.A. ¶ 25).[3]

The Notice informs Settlement Class Members of the nature of the Action, the litigation background, the terms of the agreement, the relief provided, Settlement Class Counsel's request for fees, costs, and expenses, and the scope of the release and the binding nature of the Settlement on Class Members. The Notice also describes the procedure for objecting to the Settlement; advises Settlement Class Members that they have the right to opt out and describes the consequences of opting out; and will state the date and time of the final approval hearing (subject to this Court's scheduling), advising that the date may change and how to check the Settlement Website.

All Notice and Administrative Expenses, including disbursement of the Settlement benefits, will be drawn from the Settlement Fund. S.A. ¶¶ 26, 49. Plaintiffs are informed that Notice and Administrative Expenses are expected to be approximately $350,000.00. Yanchunis Decl. ¶ 30.

### 4. Exclusion and Objection Procedures

The Notice advises Settlement Class Members of their rights to object or opt out of the Settlement and directs Settlement Class Members to the Settlement Website for

---

[3] A proposed Preliminary Approval Order is attached hereto as **Exhibit E**.

more information. The Notice provides instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Notice also provides instructions for Settlement Class Members to object to the Settlement and/or to Plaintiffs' Counsel's application for attorneys' fees, costs, and expenses. S.A. ¶¶ 70–71.

### 5. Attorneys' Fees, Costs, and Expenses

Defendant has agreed to take no position as to Class Counsel's request for an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses not to exceed $25,000.00. S.A. ¶ 88. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Yanchunis Decl. ¶ 19. This motion will be filed at least twenty-one (21) days prior to the deadline for objecting to the proposed settlement, providing ample notice to Settlement Class Members. S.A. ¶ 88.

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all claims or causes of action of every kind and description . . . that the Releasing Parties had, have or may claim now or in the future to have . . . that were or could have been asserted or alleged arising out of the same nucleus of operative facts as the claims alleged or asserted in the Action . . . including but not limited to those concerning: 1) the disclosure of the Settlement Class Members' Personal Information in the Data Security Incident; 2) Defendant's maintenance of Settlement Class Members' Personal Information as it relates to the Data Security Incident; 3) Defendant's information security policies and practices as it relates to the Data Security Incident; 4) Defendant's investigation of and response to the Data Security Incident; or 5) Defendant's provision of notice to Settlement Class Members following the Data Security Incident.

S.A. ¶¶ 33, 83.

## III.    ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Judges in this district have noted—many times—that "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[4]

---

[4] *Iverson v. Advanced Disposal Servs., Inc.*, 2021 WL 4943585, at *3 (M.D. Fla. Aug. 6, 2021) (Toomey, M.J.), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021) (Davis, J.); *Flores v. Acorn Stairlifts, Inc.*, 2020 WL 9549903, at *1 (M.D. Fla. Jan. 31, 2020) (same) (Smith, M.J.) *report and recommendation adopted*, Case No. 6:19-cv-00844, ECF No. 49 (M.D. Fla. March 24, 2020) (Berger, J.).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

**1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).**

**a. Numerosity.**

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendant identified approximately 647,000 people in the Settlement Class. S.A. ¶ 38. Thus, numerosity is easily satisfied.

**b. Commonality.**

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of

classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[5] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiffs alleged, among others, the following common questions:

    a. Whether and to what extent Defendant had a duty to protect the Personal Information of Class Members;

    b. Whether Defendant was negligent in collecting and storing Plaintiffs' and Class Members' Personal Information;

    c. Whether Defendant had duties not to disclose the Personal Information of Class Members to unauthorized third parties;

    d. Whether Defendant took reasonable steps and measures to safeguard Plaintiffs' and Class Members' Personal Information;

    e. Whether Defendant failed to adequately safeguard the Personal Information of Class Members;

    f. Whether Defendant failed to implement and maintain reasonable security

---

[5] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

procedures and practices appropriate to the nature and scope of the information compromised in the Data Security Incident;

g. Whether implied or express contracts existed between Defendant, on the one hand, and Plaintiffs and Class Members on the other;

h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Class Members; and

i. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages as a result of Defendant's wrongful conduct.

(Doc. 88 at ¶ 84). Such issues, focusing on Defendant's conduct, satisfy commonality.[6]

### c. Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[7] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically,

---

[6] *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").
[7] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory, i.e., that Defendant had a legal duty to protect Plaintiffs' and Class Members' Personal Information. Because there is a "sufficient nexus" between Plaintiffs' and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. They provided their Personal Information to Defendant and allege it was compromised by the Data Security Incident, as the Personal Information of the Settlement Class was also allegedly compromised. Indeed, Plaintiffs' claims coincide identically with the claims of the Settlement Class, and Plaintiffs and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiffs have prosecuted this case for the benefit of all Settlement Class Members.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Yanchunis Decl., ¶¶ 3–12, and its Composite

Exh. 1. Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2. The Predominance and Superiority Requirements of Are Met.

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by

representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[8] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[9]

Common issues readily predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiffs' Personal Information, like that of every other Class member—can be established through generalized evidence.[10] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting their Personal Information and whether Defendant breached that duty. The many common questions that arise

---

[8] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[9] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

[10] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

15

from Defendant's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[11] Because the claims are being certified for settlement purposes, there are no manageability issues.[12]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"[13] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

---

[11] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[12] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[13] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[14] Additionally, the Settlement will give the parties the benefit of finality.

**B. Plaintiff's Counsel Should Be Appointed as Settlement Class Counsel.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Mr. Yanchunis's Declaration,

---

[14] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

proposed Settlement Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiffs and the Settlement Class. Accordingly, the Court should appoint John A. Yanchunis, Ryan J. McGee, Patrick A. Barthle, William 'Billy' Peerce Howard, and Amanda J. Allen as Settlement Class Counsel.

## C. The Settlement Is Fair, Reasonable, and Adequate.

After determining that certification is appropriate for, courts next consider whether the proposed settlement warrants preliminary approval. Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[15]

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[16] Thus, while district courts have discretion in deciding whether to approve a proposed

---

[15] *See Taylor v. Citizens Telecom Servs. Co., LLC*, ----F. Supp. 3d ---- 2022 WL 456448, at *2 (M.D. Fla. Feb. 8, 2022) (Honeywell, J.) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[16] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1.  The Settlement Satisfies Amended Rule 23(e)

Rule 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes.  As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiffs and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Rodney Max. Yanchunis Decl. ¶ 16.[17] Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

### b. Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to succeed against the pending motion to dismiss (Doc. 89), and on a motion for class certification, and likely survive an appeal thereof.

Pursuant to the Settlement, Defendant will create a Settlement Fund of $4,000,000. Each Settlement Class Member who submits a timely and valid claim form may receive reimbursement of up to $15,000 for out-of-pocket losses, as well as reimbursement of Attested Time up to five (5) hours at twenty-five dollars ($25) per hour. Settlement Class Members are also eligible to enroll in valuable Identity Theft

---

[17] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

Protection Services/Minor Monitoring Services for three (3) years. Regardless of whether a claim form is submitted, all Settlement Class Members will have access to fraud assistance/identity restoration services for a period of three (3) years from the Effective Date. S.A. ¶¶ 51, 53, 56–58. Given the relief available, Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting the Settlement Class are challenges to standing as well as attacks on the substantive claims Plaintiffs have alleged. *See* (Doc. 89). Nevertheless, and despite the strength of the Settlement, Plaintiffs are pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant consistently denied the allegations and made clear that it would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. S.A. ¶¶ 52, 54. Payments for approved claims will be distributed as soon as practicable after allocation and distribution are determined by the Settlement Administrator following the Effective Date. S.A. ¶ 59.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief. Yanchunis Decl. ¶ 19. Plaintiffs will seek attorneys' fees of up to thirty percent (33.33%) of the Settlement Fund, plus reasonable out-of-pocket costs and litigation expenses incurred, not to exceed $25,000.00. S.A. ¶ 88. Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid no later than three (3) days after the Effective Date. *Id.*

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed. Subsection (C) of Rule 23(e)(2) is therefore met.

### c. The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form and/or for important Identity Theft Protection Services and fraud assistance/identity restoration services for three (3) years from the Effective Date. Yanchunis Decl. ¶ 27.

### 2. The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for review of a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."[18] "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations

---

[18] *Id.* (quoting MANUAL FOR COMPLEX LITIG., §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.[19]

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

**D. The Proposed Class Notice Satisfies Rule 23.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information

---

[19] *See* MANUAL FOR COMPLEX LITIG. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The Notice program here satisfies all of these criteria and is designed to provide the best notice practicable. Foremost, the Notice is reasonably calculated to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Settlement Class Counsel's request for Fee Award and Costs, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). Additionally, the Notice program is comprised of: (1) direct notice sent by email to Settlement Class Members whose personal e-mail addresses are available within Defendant's records; (2) direct notice sent by U.S. mail for Settlement Class Members whose personal e-mail addresses are not available within Defendant's records; and (3) Notice posted to the Settlement Website. S.A. ¶¶ 43, 69, 72. This approach will satisfy due process as set forth in the Declaration of Cam Azari. **Ex. D**.

The form of the Preliminarily Approval Order, Exhibit E, has been drafted and approved by counsel for Plaintiffs and counsel for Defendant. The proposed claim form, Exhibit 2 to the Settlement, likewise satisfies all of the above criteria. Finally, Defendant will provide the notification required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials. S.A. ¶ 77.

24

Therefore, the Notice and Notice program satisfy all applicable requirements of the law, including Rule 23 and Due Process. The Court should therefore approve the Notice, Notice program, and the form and content of the claim form and Notice.

### E. The Court Should Schedule a Final Approval Hearing.

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Settlement Class Counsel's request for Fee Award and Costs. Plaintiffs request that the Court schedule the Final Approval Hearing at a date convenient for the Court, at least 90 days after Defendant notifies the appropriate government officials pursuant to CAFA. Class Counsel will file the motion for Final Approval no later than 21 days prior to the hearing.

## IV.    CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the Settlement Class; (3) appointing Ray Stoll, Heidi Imhof, and Chase Whitman as Settlement Class Representatives; (4) appointing John A. Yanchunis, Ryan J. McGee, Patrick A. Barthle, William 'Billy' Peerce Howard, and Amanda J. Allen as Settlement Class Counsel; (5) approving the proposed Notice program and authorizing its dissemination; (6) appointing Epiq as the Settlement Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process. A proposed Preliminary Approval Order is attached as Exhibit E.

Dated: March 16, 2022

Respectfully submitted,

*/s/ John A. Yanchunis*
JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
Patrick A. Barthle II
pbarthle@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

WILLIAM 'BILLY' PEERCE
HOWARD
Billy@TheConsumerProtectionFirm.com
AMANDA J. ALLEN
Amanda@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION
FIRM
4030 Henderson Boulevard
Tampa, FL 33629
(813) 500-1500 Telephone
(813) 435-2369 Facsimile

*Attorneys for Plaintiffs and the Proposed Class*

## Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiffs conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ John A. Yanchunis*