# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| RAY STOLL, HEIDI IMHOF, and CHASE WHITMAN, on behalf of B.W., a minor child, individually and on behalf of all others similarly situated, | Case No.: 8:20-cv-01798-CEH (AAS) |
| Plaintiffs, | |
| v. | |
| MUSCULOSKELETAL INSTITUTE, CHARTERED d/b/a FLORIDA ORTHOPAEDIC INSTITUTE, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND INCORPORATED MEMORANDUM OF LAW**

On March 16, 2022, Plaintiffs moved for preliminary approval of the proposed class action Settlement and for certification of the Settlement Class (the "Preliminary Approval Motion").[1] The Court preliminarily approved the Settlement on May 16, 2022, finding that the terms of the Settlement were "fair, reasonable, and adequate" and the Class should be given notice. (Doc. 98) (the "Preliminary Approval Order").

Plaintiffs now move for final approval of the Settlement and for certification of the Settlement Class, and request that the Court:

1) Approve the Settlement as fair, reasonable, and adequate under Rule 23(e);
2) Certify the Settlement Class under Rule 23(b);
3) Appoint Plaintiffs as Class Representatives for the Settlement Class;
4) Appoint as Class Counsel John A. Yanchunis, Ryan J. McGee, and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, and William P. Howard and Amanda J. Allen of The Consumer Protection Firm;
5) Find the Notice Program as implemented satisfies Rule 23 and due process;
6) Appoint Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator;
7) Grant Class Counsel's Motion for Attorneys' Fees and Costs, as reported and recommended by Judge Sansone;
8) Exclude the one opt-out from the Settlement; and
9) Grant any further relief as the Court deems just and proper.

As set forth in the declaration of Cameron Azari of Epiq, Epiq implemented an extensive Court-approved Notice Program with Direct Notice and also through internet sponsored search listings that advertised the Settlement Website, all of which were designed to reach the Class. The Notice Program reached at least 92.6% of the Class through direct notice, and the supplemental print media and online ads increasing that reach. As further set forth in Mr. Azari's declaration, the response from

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which was filed with the Preliminary Approval Motion. (Doc. 93-1).

the class has been positive: as of September 7, 2022, a total of 3,269 have been received with only one opt-out and no objections. Declaration of Cameron Azari ¶¶ 29–30, attached as **Exhibit A** ("Azari Decl.").

## I.    INTRODUCTION

Plaintiffs commenced this litigation after Defendant, Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute ("Defendant" or "FOI") disclosed that on or about April 9, 2020, it experienced a ransomware attack resulting in the potential exposure of sensitive and private Personal Information of certain of its current and former patients (the "Data Security Incident"). Plaintiffs allege, *inter alia*, that FOI failed to protect Plaintiffs' Personal Information from being compromised in the Data Security Incident. As a result of Plaintiffs' targeted discovery, extensive motions practice, and further litigation efforts, the parties engaged in multiple rounds of mediation and reached a hard-fought and arms-length resolution to this litigation.

As discussed in detail in Plaintiffs' Preliminary Approval Motion (Doc. 93), the Settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. The Settlement provides for a $4,000,000 non-reversionary common fund that squarely addresses the issues raised in this case and affords Class Members significant relief: identity theft protection services, identity restoration services, minor monitoring services, and reimbursement for out-of-pocket losses and attested time. The Settlement also provides for notice and administrative expenses and attorneys' fees and costs. The Settlement compares favorably with settlements in similar litigation and was reached only after intensive, arms-length negotiations before a neutral and

experienced mediator, Rodney A. Max, Esq. If finally approved, the Settlement will resolve all claims arising out of the Data Security Incident and will provide Class Members with the precise relief this litigation was filed to obtain.

Accordingly, pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an order granting final approval of the settlement and finally certifying the Settlement Class.

## II.    BACKGROUND

### A. Litigation Summary and Information About the Settlement

The parties agreed on and retained Rodney A. Max, a highly experienced mediator, to assist the parties with settlement negotiations. Declaration of John A. Yanchunis, attached as **Exhibit B** ("Yanchunis Decl."), ¶ 16. The parties briefed their respective positions on the facts, claims, defenses, and assessed the risks of litigation.

On November 6, 2020, the parties had a full-day mediation session with Mr. Max. *Id.* ¶ 16. The negotiations were hard-fought throughout and the process was conducted at arm's length. *Id.* The matter did not resolve during the mediation session and proceeded with litigation, including extensive discovery via interrogatories and document production. On February 18, 2021, the Court entered a stay, (Doc. 79), and on July 14, 2021, Plaintiffs moved to lift that stay, which was granted, (Doc. 82).

Following lifting of the stay, Plaintiffs took two depositions then the parties resumed mediation discussions with Mr. Max. Yanchunis Decl. ¶ 16. After extensive arm's length negotiations conducted through Mr. Max and directly between the

parties, an agreement was reached on the essential terms of settlement. *Id.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 20. Based on Plaintiffs' counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by Defendant, Plaintiffs' counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

### B. The Terms of the Settlement Agreement

### 1. The Settlement Class

The proposed Settlement Class is defined as the:

approximately 647,000 individuals identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Defendant that their Personal Information was or may have been compromised in the Data Security Incident initially disclosed by Defendant in or about June 2020.[2]

### 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

---

[2] S.A. ¶ 38. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, management companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

1) Reimbursement of Out-of-Pocket Losses for up to $15,000.00;
2) Reimbursement of Attested Time up to five (5) hours at twenty-five dollars ($25) per hour;
3) Three (3) years of Identity Theft Protection Services provided by Pango f/k/a Aura, regardless of whether the Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses or Attested Time;
4) Automatic eligibility to access fraud assistance/identity restoration services offered through Pango f/k/a Aura for a period of three (3) years from the Effective Date, regardless of whether a claim is submitted under the Settlement;
5) Participating Settlement Class Members under the age of eighteen (18) on or before the Claims Deadline are automatically eligible to enroll in Minor Monitoring Services provided by Pango for a period of three (3) years from the Effective Date, regardless of whether they submit a claim under the Settlement.

S.A. ¶¶ 51, 53, 56–58.

Participating Settlement Class Members are subject to an individual aggregate cap of $15,000.00. Thus, Participating Settlement Class Members may submit claims for reimbursement of Attested Time and/or Out-of-Pocket Losses but the combined claims will be subject to the individual aggregate cap of $15,000.00. S.A. ¶ 66.

The Identity Theft Protection, Minor Monitoring, and fraud assistance/ identity restoration services to be provided by Pango under the Settlement are robust and important. The retail cost of buying the same Identity Theft Protection Services would be $180.00 per person per year for 1 year of service and $540.00 per person for 3 years of service. These services are being provided under the Settlement for a total cost of $1,172,500.00 to be drawn from the Settlement Fund. (Doc. 93-3).

### 3.  The Notice Program

On May 16, 2022, the Court preliminarily appointed Epiq to be the Settlement Administrator. On May 12, 2022, Epiq commenced the Notice Program. Azari Decl.

¶¶ 11–20. The Notice program utilized direct notice disseminated via e-mail to Settlement Class Members whose personal e-mail addresses are available within Defendant's records, and via U.S. mail to all Settlement Class members whose personal e-mail addresses are not available within Defendant's records. *Id.* at ¶¶ 11–20. On June 15, 2022, Epiq also established a Settlement Website, which included information about the Settlement, related case documents, and the Settlement Agreement, as well as file claim forms electronically. *Id.* at ¶ 24. Epiq also employed internet sponsored search listings to bolster the prominence of the Settlement Website. *Id.* at ¶ 22–23. As of September 7, 2022, the Settlement Website had 12,160 unique visitor sessions and 42,424 impressions. *Id.* at ¶ 25. Finally, on June 16, 2022, Epiq established the toll-free number that Class Members are able to listen to a summary of the Settlement, interact with an automated FAQ and associated answer, request notice and claim forms, and during business hours speak with a representative. *Id.* at ¶ 26. As of September 7, 2022, there have been 2,653 calls spanning 14,267 minutes of total use, and representatives have handled 894 inbound calls representing 10,221 minutes, and 187 outbound calls representing 384 minutes. *Id.* at ¶ 27.

### 4. Attorneys' Fees, Costs, and Expenses

The Settlement common fund provides for an award of Attorneys' Fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses not to exceed $25,000. S.A. ¶ 88. On July 5, 2022, Plaintiffs filed their unopposed motion for attorneys' fees and costs seeking $1,333,333.00 in attorneys' fees and $17,307.21 in litigation costs, which was promptly posted to the

Settlement Website. (Doc. 100); Yanchunis Decl. ¶ 21. That motion was referred to Magistrate Judge Sansone who—after requesting, receiving, and reviewing Class Counsel's detailed time records—recommended approving Plaintiffs' request in full. (Docs. 101, 104). Plaintiffs request that the Court adopt Judge Sansone's report and recommendation.

### 5.  Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all claims or causes of action of every kind and description . . . that the Releasing Parties had, have or may claim now or in the future to have . . . that were or could have been asserted or alleged arising out of the same nucleus of operative facts as the claims alleged or asserted in the Action . . . including but not limited to those concerning: 1) the disclosure of the Settlement Class Members' Personal Information in the Data Security Incident; 2) Defendant's maintenance of Settlement Class Members' Personal Information as it relates to the Data Security Incident; 3) Defendant's information security policies and practices as it relates to the Data Security Incident; 4) Defendant's investigation of and response to the Data Security Incident; or 5) Defendant's provision of notice to Settlement Class Members following the Data Security Incident.

S.A. ¶¶ 33, 83.

## III.    ARGUMENT

### A. Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). (Doc. 99); *See* Fed. R. Civ. P. 23(a)(1)–(4), (b)(3); MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Since the Court's provisional

7

certification and commencing the Notice Program there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiffs' Preliminary Approval Motion (Doc. 93), Plaintiffs respectfully submit that the Settlement Class should be finally certified.

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendant identified approximately 647,000 people in the Settlement Class. S.A. ¶ 38. Thus, numerosity is easily satisfied.

### b. Commonality.

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and that at least one common contention is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a

low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013); *Dukes*, 131 S. Ct. at 2556 ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."). Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (citations omitted).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiffs alleged, among others, the following common questions:

1) Whether and to what extent Defendant had a duty to protect the Personal Information of Class Members;
2) Whether Defendant was negligent in collecting and storing Plaintiffs' and Class Members' Personal Information;
3) Whether Defendant had duties not to disclose the Personal Information of Class Members to unauthorized third parties;
4) Whether Defendant took reasonable steps and measures to safeguard Plaintiffs' and Class Members' Personal Information;
5) Whether Defendant failed to adequately safeguard the Personal Information of Class Members;
6) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Security Incident;
7) Whether implied or express contracts existed between Defendant, on the one hand, and Plaintiffs and Class Members on the other;
8) Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Class Members; and
9) Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages as a result of Defendant's wrongful conduct.

The central question behind every claim in this litigation boils down to whether Defendant adequately secured its patients' Personal Information. The answer to that

question depends on common evidence that does not vary from class member to class member, and can be fairly resolved on a class-wide basis (via litigation or settlement) for all class members at once. These common issues converge at the center of Defendant's conduct in this litigation, satisfying the commonality requirement.[3]

### c. Typicality.

Typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[4] When the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory, i.e., that Defendant had a legal duty to protect Plaintiffs' and Class Members' Personal Information. Because there is a "sufficient nexus" between Plaintiffs' and Settlement

---

[3] *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) (commonality satisfied where all "class members had their private information stored in Countrywide's databases at the time of the data breach."); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (same).

[4] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representatives "not possess interests which are antagonistic to the interests of the class" and that their counsel "be qualified, experienced, and generally able to conduct the litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citations omitted). Both are satisfied here.

Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. They provided their Personal Information to Defendant and allege it was compromised as a result of the Data Security Incident. Those claims are identical to the claims of the Settlement Class, and with no objections and only one opt-out, Plaintiffs and the Settlement Class desire the same outcome in this litigation. Plaintiffs have prosecuted this case for the benefit of all Settlement Class Members, participating in the litigation by reviewing pleadings, serving discovery, answering discovery, and providing input in crafting and approving the Settlement.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Yanchunis Decl., ¶¶ 2–12, 32; *see* (Doc. 104 at 7) (finding that proposed Settlement Class Counsel have "extensive experience and knowledge in complex litigation"). Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2.  The Predominance and Superiority Requirements of Are Met.

Certification under Rule 23(b)(3) requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 644 (M.D. Fla. 2011) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Katzman Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). The Settlement Class readily meets these requirements.

### a.  Predominance.

Rule 23(b)(3)'s predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary

relief."[5] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[6]

Common issues readily predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiffs' Personal Information, like that of every other Class member—can be established through generalized evidence.[7] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting their Personal Information and whether Defendant breached that duty. The many common questions that arise from Defendant's conduct predominate over individualized issues. Other courts have

---

[5] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[6] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

[7] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

recognized that common issues arising from a data breach predominate.[8] Because the

claims are being certified for settlement purposes, there are no manageability issues.[9]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly,

adequately, and efficiently resolve the claims of the proposed Settlement Class. As

courts have historically noted, "[t]he class action fills an essential role when the

plaintiffs would not have the incentive or resources to prosecute relatively small claims

in individual suits, leaving the defendant free from legal accountability." *In re Checking*,

286 F.R.D. at 659. "The inquiry into whether the class action is the superior method

for a particular case focuses on 'increased efficiency.'"[10] The Court may consider: (1)

the interests of members of the class in individually controlling the prosecution or

defense of separate actions; (2) the extent and nature of any litigation concerning the

controversy already commenced by or against members of the class; (3) the desirability

or undesirability of concentrating the litigation of the claims in the particular forum;

and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual

lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R.

---

[8] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[9] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[10] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants.

Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the single opt-out and no objectors, as well as the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[11]

Accordingly, the requirements for certification under Rule 23(a) and (b) are met.

## B. Plaintiff's Counsel Should Be Appointed as Settlement Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Mr. Yanchunis' Declaration, proposed Settlement Class Counsel have extensive experience prosecuting similar

---

[11] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiffs and the Settlement Class. Accordingly, the Court should appoint John A. Yanchunis, Ryan J. McGee, Patrick A. Barthle, William 'Billy' Peerce Howard, and Amanda J. Allen as Settlement Class Counsel.

## C. The Settlement Is Fair, Reasonable, and Adequate.

The procedure for review of a proposed class action settlement is a well-established, two-step-process. 4 NEWBERG ON CLASS ACTIONS, § 11.25, at 38–39 (4th ed. 2002). In the first step, the Court determines, as it did here, whether the proposed settlement should be preliminarily approved. *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004). In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved. *See id.* §§ 21.633-35. In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. Everbank*, 2016 WL 457011, at *6

(S.D. Fla. Feb. 3, 2016) (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x

429, 434 (11th Cir. 2012)).

### 1. The Settlement Satisfies the Standard for Final Approval

Under Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon

a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the
> class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the
>> class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing
>> of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). The Advisory Committee noted, however, that "[t]he goal of

this amendment is not to displace any factor" previously considered in any given

Circuit. *See* 4 NEWBERG ON CLASS ACTIONS, § 13:58 ("[V]arious pre-existing legal

factors are not captured by amended Rule 23(e)(2)'s list of factors may prove relevant

in particular cases"). The revised rule reflects factors already used in the Eleventh

Circuit in analyzing the fairness, reasonableness, and adequacy of a class settlement

under Rule 23(e):

> 1)  the existence of fraud or collusion behind the settlement;
> 2)  the complexity, expense, and likely duration of the litigation;
> 3)  the stage of the proceedings and the amount of discovery completed;
> 4)  the probability of the Class Representative's success on the merits;
> 5)  the range of possible recovery; and
> 6)  the opinions of the class counsel, class representative, and the
>    substance and amount of opposition to the settlement

*Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at *8 (S.D. Fla. April 13, 2016), (citing *Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986). The analysis of these factors shows this Settlement to be eminently fair, adequate, and reasonable.

### a.  Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiffs and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Proposed Settlement Class Counsel have extensive experience prosecuting class actions, particularly privacy and data breach cases, throughout the country, and there is no conflict or any antagonism between Plaintiffs and the Settlement Class, as evidenced by the extensive motions practice and litigation efforts reflected on the Court's docket. Moreover, the Settlement was negotiated at arm's length under the supervision of an experienced neutral Rodney A. Max. Yanchunis Decl. ¶ 16. Subsections (A) and (B) of Rule 23(e)(2) are therefore met. These circumstances weigh in favor of approval.[12] Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendations of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 633, 703 (M.D. Fla. 2005). Further, with the

---

[12] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

benefit of extensive experience in this area, proposed Settlement Class Counsel are in favor of the proposed Settlement and recommend its final approval.

### b.  The Relief Provided to the Settlement Class is Adequate

The relief offered by the Settlement (both monetary and injunctive) is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to succeed against the pending motion to dismiss, class certification, and survive any appeals.

Almost all class actions involve an inherent level of risk, expense, and complexity, which is one reason why judicial policy so strongly favors resolving class actions through settlement. "[T]here is an overriding public interest in setting class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1998). This case is not only complex, but it is in an unsettled field of litigation: data breach litigation. *See, e.g., In re Countrywide*, 2010 WL 3341200 at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this [data breach] case is unlikely to produce the plaintiffs' desired results").

Data breach cases, such as this one, are unsettled, expensive, and complex. *See In re Sonic Corp. Cust. Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law

often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Cust. Data Sec. Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk.

While Plaintiffs believe that they would prevail on their claims, there is little directly analogous precedent to rely upon. Beyond the merits, class certification is challenging in any case. Further, while Plaintiffs believe that they would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not certain. Any potential certification would also be subject to later appeal and potential reversal. The cost of trial and any appeals would be significant and would considerably delay the resolution of this litigation without the guarantee of any relief.

The Settlement is a non-reversionary $4,000,000 fund that includes notice and any awarded attorneys' fees and costs. The benefits available here compare favorably to what Class Members could recover if successful at trial. Each Settlement Class Member who submits a timely and valid claim form may receive reimbursement of up

to $15,000 for out-of-pocket losses, as well as reimbursement of Attested Time up to

five hours at twenty-five dollars per hour. Settlement Class Members are also eligible

to enroll in valuable Identity Theft Protection Services/Minor Monitoring Services for

three (3) years. Regardless of whether a claim form is submitted, all Settlement Class

Members will have access to fraud assistance/identity restoration services for a period

of three (3) years from the Effective Date. S.A. ¶¶ 51, 53, 56–58. Given the relief

available, Class Counsel believe the results achieved are well within the range of

possible recovery at trial and certainly within approval in the settlement context.

By way of example of class action settlements approved in this District, in *In re

21st Century Oncology Customer Data Security Breach Litigation*, No. 8:16-md-02737-MSS-

AEP (M.D. Fla.) ("*In re 21ˢᵗ Century*"), a class was brought for a data breach involving

Social Security Numbers and other sensitive information similar to this case. Final

approval was granted in June 2021, where settlement class members were entitled to

recover similar types and amounts of reimbursement: $10,000 for out-of-pocket

expenses ($15,000 here); $20 per hour for up to two hours of time spent related to the

data breach ($25 per hour and up to five hours here); and two years of identity theft

protection services (three years here). *In re 21st Century*, Docs. 242, 249, 253, 269.

In other districts similar class action settlements have been approved over

objection of class members (whereas no objections have been filed in this case). *See,

e.g.*, *In re Morgan Stanley Data Sec. Litig.*, No. 1:20-cv-05914-PAE, Doc. 156 (S.D.N.Y.

Aug. 5, 2022) (final approval granted to data security incident class action involving

Social Security Numbers and related sensitive information, providing recovery up to:

$10,000 for out-of-pocket expenses; $20 per hour for time spent; providing financial fraud protection services); *Pfeiffer v. RadNet, Inc.*, No. 2:20-cv-09553-RGK-SK, Doc. 70 (C.D. Cal. Feb. 22, 2022) (final approval granted to data breach class action involving Social Security Numbers and related sensitive information, providing recovery up to: $15,000 for out-of-pocket expenses; $25 per hour for five hours for time spent; providing credit monitoring and identity theft restoration services).

### c.  The Settlement Treats Class Members Equitably

Finally, Amended Rule 23(e) requires that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form and/or for important Identity Theft Protection Services and fraud assistance/identity restoration services for three (3) years from the Effective Date. S.A. ¶¶ 51–58; Yanchunis Decl. ¶ 26. The proposed relief is also proportional to damages incurred by each Settlement Class Member.

### D. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement

The Court should also give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren* 693 F. Supp. at 1060; *see also In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.

'[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). As one district court stated:

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel have substantial experience prosecuting large, complex consumer class actions. Yanchunis Decl. ¶¶ 2–12, 32; *see* (Doc. 104 at 7) (finding that proposed Settlement Class Counsel have "extensive experience and knowledge in complex litigation"). After protracted discovery (including briefing and a Rule 16 Conference), independent fact investigation, and mediation before a well-qualified and experienced mediator, Class Counsel are confident that the Settlement provides significant relief to the Class, and is in the best interests of the Class. Yanchunis Decl. ¶ 28. Class Counsel heartedly endorse the Settlement. Additionally, the reaction of the Settlement Class has been positive. As of September 7, there are zero objections, only one opt-out, and 3,269 claims have been received. Azari Decl. ¶ 30. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an

objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement").

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying Proposed Final Approval Order and Proposed Judgment, approving the Class Settlement, finally certifying the Settlement Class, finally appointing Plaintiffs as Class Representatives, finally appointing as Class Counsel John A. Yanchunis, Ryan J. McGee, and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, and William P. Howard and Amanda J. Allen of The Consumer Protection Firm, finding the Notice Program as implemented satisfies Rule 23 and Due Process, finally appointing Epiq as the Settlement Administrator, granting Class Counsel's attorneys' fees of $1,333,333.00 and litigation expenses of $17,307.21, excluding the one opt-out listed in the Declaration of Cameron Azari, and dismissing the action with prejudice.

## <u>Local Rule 3.01(g) Certification</u>

In accord with Local Rule 3.01(g), Plaintiffs conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

Dated: September 8, 2022                      Respectfully submitted,

                                                          */s/ John A. Yanchunis*

JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
PATRICK A. BARTHLE II
pbarthle@forthepeople.com
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

WILLIAM 'BILLY' PEERCE
HOWARD
Billy@TheConsumerProtectionFirm.com
AMANDA J. ALLEN
Amanda@TheConsumerProtectionFirm.c
om
THE CONSUMER PROTECTION
FIRM
4030 Henderson Boulevard
Tampa, FL 33629
(813) 500-1500 Telephone
(813) 435-2369 Facsimile

*Attorneys for Plaintiffs and the Proposed
Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2022, a true and correct copy of

the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies

of the foregoing document will be served upon counsel via transmission of Notices of

Electronic Filing generated by CM/ECF.

/s/ *John A. Yanchunis*